STATE *ex rel.* DONALD C. CARMAN, STATE TAX COMMISSIONER

*v.*

EDGAR B. SIMS, *Auditor,* STATE OF WEST VIRGINIA.

(No. 12022)

Submitted April 13, 1960.  Decided June 14, 1960.

*W. W. Barron,* Attorney General, *Henry C. Bias, Jr.,* Assistant Attorney General, *Louis R. Tabit,* Special Assistant Attorney General, for relator.

*W. W. Barron,* Attorney General, *Giles D. H. Snyder,* Assistant Attorney General, for respondent.

BROWNING, PRESIDENT:

Relator, Donald C. Carman, State Tax Commissioner, instituted this original proceeding in mandamus seeking to compel the respondent, Edgar B. Sims, Auditor of the State of West Virginia, to honor certain claims for traveling expenses in behalf of two employees of relator, approved by relator and submitted to the respondent for payment.

The petition alleges the identities of the parties, and the statute, Code, 12-3-11, as amended, authorizing

the reimbursement from public funds of actual traveling expenses incurred by officers and employees of the State of West Virginia in the course of their official duties. The petition then alleges that, by virtue of its authority under Code, 5-4, as amended, the Board of Public Works adopted and promulgated certain travel regulations, which provide for the reimbursement of traveling expenses between an employee's official headquarters and the place to which his duties require him to go. These regulations, a copy of which is filed with the petition as "Exhibit No. 1", also provide that an employee's "official headquarters" is presumed to be at the State Capitol in Charleston, unless designated by the department head to be at some other specific location, one of which may be "the domicile of a field worker, inspector, examiner or similar employee resident within the territory to which he is assigned."

The petition then alleges that relator, acting pursuant to these regulations, had designated the "official headquarters" of his employee, Ralph J. Higgins, to be at his domicile in St. Marys, Pleasants County, West Virginia, 109 miles from the State Capitol at Charleston, and, similarly, had designated the "official headquarters" of another employee, Benny Harold Justice, to be at his domicile in South Charleston, Kanawha County, West Virginia, 13 miles from the State Capitol at Charleston, and had directed these two men to report to the State Capitol almost daily during the month of November, 1959, for the "purpose of working on certain matters involving and necessitating the use of specific knowledge held only by" those respective employees, for which travel, meals and lodging, Higgins submitted an itemized expense account, and for which daily travel and meals, Justice submitted his itemized expense account, which accounts were approved by relator and submitted by him to the Department of Finance and Administration, where they were again approved, and submitted to the respondent for the issuance of warrants for the

payment thereof. The petition then alleges that respondent has refused and continues to refuse to honor such claims; that such refusal is unwarranted, arbitrary and contrary to law; that, at the time of respondent's refusal to pay the claims, sufficient moneys had been appropriated for this purpose, which moneys were unspent and available in the State Treasury; and, concluded with a prayer for the relief hereinbefore mentioned.

Respondent appeared in answer to a rule issued by this Court, returnable April 12, 1960, and demurred to the petition upon the following grounds: (1) Payment of the claims in question would constitute an unlawful granting of the credit of the State in aid of an individual, in violation of Article X, Section 6 of the Constitution; (2) the regulations of the Board of Public Works, upon which the claims are based, are void as unauthorized by statute and beyond the powers of the Board; (3) such regulations are void, and constitute an improper invasion of the powers belonging to the Legislature in contravention of Article V, Section 1 of the Constitution; (4) such regulations are void, at least as to the particular claims in question, as an attempt by the Board to authorize the expenditure of public funds in payment of claims without express authority of law, in violation of Article VI, Section 38 of the Constitution; (5) such regulations are void, at least as to the particular claims in question, as unreasonable, arbitrary, abusive, unfair, discriminatory and violative of the spirit and purpose of Code, 12-3-11, as amended; (6) respondent is without authority of law, statutory or otherwise, to honor the claims in question; and (7) other insufficiencies apparent on the face of the petition.

While this Court seems not to have had occasion to decide the question, the law seems well settled that the right of a public official, employee, or private citizen, to reimbursement for expenses incurred in the performance of an official duty must be found in a constitutional or statutory provision conferring

such right directly or by necessary implication. 67 C.J.S., Officers, Section 91. *Bayless v. Knox County*, (Tenn.), 286 S. W. 2d. 579, 588; *Madden v. Riley*, (Cal.), 128 P. 2d. 602; *MacKenzie v. Douglas County*, (Ore.), 159 P. 625. The only applicable provision in this jurisdiction is Code, 12-3-11, as amended. It is entitled "Traveling Expenses; Auditing by State Board; Dues to Voluntary Organizations." The first two sentences of this section read: "The board known as the state auditing board of traveling expenses shall continue as heretofore by law created. The governor, attorney general and the secretary of state shall be ex officio members of and constitute the board." Therein it is provided that: "It shall be unlawful for the auditor to issue his warrant in payment of any claim presented by a state officer or employee for expenses incurred while traveling without the state, unless the trip is authorized and the claim is approved by the state auditing board of traveling expenses: * * *." Then provision is made for the payment for dues or membership in annual or other voluntary organizations when "submitted to the budget director and approved by the board of public works." When this is done, it is provided that such requisition shall be "honored for payment by the state auditor." Provision is made that all expense accounts shall be verified by affidavit, and immediately following is this language: "* * * If the account is for traveling *without* the state, it shall be made out in triplicate, one copy retained in the office of the officer or employee incurring the expense, one copy filed with the state auditing board of traveling expenses, and the other copy filed with the auditor. If the account is for traveling *within* the state, it shall be made out in duplicate, one copy retained in the office of the officer or employee incurring the expense and the other copy filed with the auditor." (Italics Supplied.) The respondent contends with considerable logic that, since this is the only section of the law of this State relating to reimbursement for expenses incurred by officials and employees, the sole authority

for promulgating rules and regulations relating to traveling within the State, as well as without the State, is in the State Auditing Board. However, in interpreting the language used in this section, and construing its separate provisions, it is the view of this Court that it was the intention of the Legislature to empower this body to supervise only the reimbursement of expenses incurred by officials and employees of the State while traveling without the State. If this section provided otherwise, the members of the Board, the Governor, Attorney General, and the Secretary of State would have little time to devote to their constitutional duties, and would be employed almost entirely in examining and auditing the hundreds of expense accounts that are filed monthly by officials and employees of this State incident to their travels within the State in performance of their duties.

In the absence of specific legislation, an official or State employee may not be reimbursed for expenses incurred in traveling from his home to his place of employment. *Thompson v. Frohmiller*, (Ariz.), 107 P. 2d. 375; and *Austin v. Barrett*, (Ariz.), 16 P. 2d. 12. Furthermore, in the absence of an applicable statutory provision, or a valid regulation adopted pursuant thereto, the rule seems to be that an official or employee of a state, or other unit of government, is presumed to have his headquarters at the state capitol, county courthouse, or city hall, and that he may be reimbursed only for expenses incurred by necessary traveling which begins and ends at those places. The concomitant loss of efficiency and greatly augmented expenses involved in administering the affairs of the government of this State by such procedure is evident.

On January 10, 1958, the Board of Public Works of this State, of which the respondent was at that time and had for many years theretofore been a member, promulgated certain traveling regulations relative to officials and employees of this State. A copy of these regulations is attached to the petition as heretofore

stated. Insofar as pertinent to this proceeding the regulations provide: "Expenses will not be allowed which are incurred at the official station of any official or employee. The official station of each employee is to be the state capitol in Charleston unless established by the detpartment head at: (1) A branch office; (2) a state owned institution; (3) a location within a territory; (4) at the domicile of a field worker, inspector, examiner, or similar employee resident within the territory to which he is assigned." These regulations provide for reimbursement for traveling expenses for a state employee between his official station "and the place to which his duties require an employee to go", including a mileage allowance of eight cents a mile if a privately owned automobile is used for transportation, together with meals and lodging. As heretofore stated, the petition alleges that the petitioner had designated the "official headquarters" of Higgins and Justice to have been at their respective residences in St. Marys and South Charleston. It is apparent from what has been heretofore said that the clear right of the petitioner to a writ of mandamus depends upon the validity of these rules and regulations adopted by the Board of Public Works. In this State that is a constitutional body whose membership is composed of all of the six elected officials of the Executive Branch of the government, plus the State Superintendent of Schools, who is, under a recent constitutional amendment, appointed by the State Board of Education. The Constitution of this State, Article VI, Section 51, reposes in this Board very broad powers relating to the budgets of the various departments and agencies of the State government and delegates to this Board the authority to prepare and submit annually to the Legislature a budget, the expenditures for which must not exceed the estimated revenue as provided by law. See *State ex rel. Trent v. Sims, Auditor*, 138 W. Va. 244, 77 S. E. 2d. 122. Article 4 of Chapter 5 of the Code, is entitled "Board of Public Works." It will be observed that this article was extensively amended by Acts of the Legislature, Regular

Session, 1935, and that the authority of the Board of Public Works over the fiscal affairs of the government of this State was greatly enlarged by Section 5, as amended, giving the Board of Public Works the authority to classify the offices and employments in the State government, and its agencies ''into a personnel classification which reflects the differences in training, experience, ability and responsibility required for different types or kinds of service or employment, and shall establish uniform salary and wage scales within each class.'' Section 6, as amended, provides: ''The board of public works shall install a system of accrual accounting for the purpose of recording for each spending unit the collection of all income, the amounts available for expenditure and obligations, encumbrances and disbursements. The board shall prescribe uniform records, accounts, and forms to be used by spending units so far as may be necessary for the efficient administration of the budget.'' The other sections added in 1935 are of like import.

In *Eastern Gas & Fuel Associates v. Hatcher, Clerk, etc., West Virginia Department of Employment Security, et al.,* 144 W. Va. 229, 107 S. E. 2d. 618, this Court said: ''* * * An administrative body has the authority to make rules and regulations which are not inconsistent with the provisions of the statute under which it functions. * * *. But, an administrative body may not issue a regulation 'which is out of harmony with, or which alters, or limits, the statute being administered, * * *.' 42 Am. Jur. 358, Public Administrative Law, Section 53. To the same effect is 73 C. J. S. 415, Public Administrative Bodies and Procedure, Section 94, and many cases cited under these two sections respectively. * * *.''

This Court holds that the constitutional and statutory fiscal authority with which the Board is clothed carries with it by implication the power to promulgate and enforce reasonable rules and regulations, not in conflict with the organic or statutory law of this State, and that the rules relating to travel by State

officials and employees, and reimbursement therefor, are reasonable, and, therefore, valid. While the allegations in the petition, to the effect that the employees Higgins and Justice were required to travel from their "official headquarters" to the State Capitol for the "purpose of working on certain matters involving and necessitating the use of specific knowledge held only by" them is somewhat vague, we find that the demurrer to the petition admitting such facts as are well pleaded entitles the petitioner to the issuance of a writ of mandamus. The writ will be awarded.

*Writ awarded.*