IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2024 Term

**FILED**

**October 31, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 24-387

TRICIA JACKSON and JENNIFER KROUSE,
Respondents Below, Petitioners,

v.

MATTHEW L. HARVEY,
Petitioner Below, Respondent.

Appeal from the Circuit Court of Jefferson County
The Honorable Joseph K. Reeder, Judge;
the Honorable Perri Jo DeChristopher, Judge;
and the Honorable Jason Wharton, Judge.
Case No. 2023-P-174

AFFIRMED

Filed: October 31, 2024

Traci L. Wiley, Esq.
MacCorkle Lavender PLLC
Charleston, West Virginia

Counsel for Petitioners

Matthew L. Harvey, Esq.
Jefferson County Prosecutor's Office
Charles Town, West Virginia

Counsel for Respondent

JUSTICE WALKER delivered the Opinion of the Court.

CHIEF JUSTICE ARMSTEAD concurs and reserves the right to file a concurring opinion.

SYLLABUS BY THE COURT

1.    "In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syllabus Point 1, *Public Citizen, Inc. v. First National Bank in Fairmont*, 198 W. Va. 329, 480 S.E.2d 538 (1996).

2.    "It is a settled principle of statutory construction that courts presume the Legislature drafts and passes statutes with full knowledge of existing law." Syllabus Point 1, *Duff v. Kanawha County. Commission*, ___ W. Va. ___, 905 S.E.2d 528, 2024 WL 1715130 (2024).3.    Under West Virginia Code § 6-6-7(h) (2016), the Supreme Court of Appeals of West Virginia exercises appellate jurisdiction over a final order entered under subsection (g) of West Virginia Code § 6-6-7, removing or refusing to remove from office any of those persons listed in subsection (a) of that statute.

4.    "Public officers of a county may be removed from office for official misconduct, malfeasance in office, incompetence, neglect of duty, or gross immorality. Removal of such officers is a drastic remedy, however, and statutory provisions prescribing the grounds for removal are strictly construed." Syllabus Point 1, *Kemp v. Boyd*, 166 W. Va. 471, 275 S.E.2d 297 (1981).

5. "'To warrant removal of an official pursuant to Code, 1931, § 6-6-7, clear and convincing evidence must be adduced to meet the statutory requirement of satisfactory proof.' Syl. pt. 3, *In the Matter of Boso*, 160 W.Va. 38, 231 S.E.2d 715, (1977); Syl. pt. 9, *Evans v. Hutchinson*, 158 W.Va. 359, 214 S.E.2d 453 (1975)." Syllabus Point 2, *Kemp v. Boyd*, 166 W. Va. 471, 275 S.E.2d 297 (1981).

6. "'It is well settled as a general rule that the question of continuance is in the sound discretion of the trial court, which will not be reviewed by the appellate court, except in case it clearly appears that such discretion has been abused.' Syl. Pt. 1, *Levy v. Scottish Union & National Ins. Co.*, 58 W.Va. 546, 52 S.E. 449 (1905)." Syllabus Point 2, *Nutter v. Maynard*, 183 W. Va. 247, 395 S.E.2d 491 (1990).

7. "'Whether there has been an abuse of discretion in denying a continuance must be decided on a case-by-case basis in light of the factual circumstances presented, particularly the reasons for the continuance that were presented to the trial court at the time the request was denied.' Syllabus Point 3, *State v. Bush,* 163 W.Va. 168, 255 S.E.2d 539 (1979)." Syllabus Point 4, *West Virginia Department of Health & Human Resources Employees Federal Credit Union v. Tennant*, 215 W. Va. 387, 599 S.E.2d 810(2004).

WALKER, Justice:

Petitioners Tricia Jackson and Jennifer Krouse were members of the Jefferson County Commission. In 2023, a commission seat became vacant, and the Commission set about appointing a replacement under West Virginia Code § 3-10-7 (2018). Ms. Jackson and Ms. Krouse voiced a series of concerns about the appointment process, and so refused to attend Commission meetings in the fall of 2023. In doing so, Ms. Jackson and Ms. Krouse denied the Commission a quorum and impeded County business, including the release of a sizeable development bond. In November, Respondent Matthew Harvey, Jefferson County Prosecuting Attorney, petitioned for removal of Ms. Jackson and Ms. Krouse from the Commission under West Virginia Code § 6-6-7 (2016). In May 2024, a special court composed of three circuit court judges found that Ms. Jackson and Ms. Krouse engaged in official misconduct or neglect of their duties and ordered their removal from office. Ms. Jackson and Ms. Krouse appeal that order. After reviewing the three-judge court's detailed, forty-seven-page order, we find no error meriting reversal and affirm the order removing Ms. Jackson and Ms. Krouse from office.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ms. Jackson and Ms. Krouse took office as Commissioners of the Jefferson County Commission on January 1, 2021, and January 1, 2023, respectively. Another

---

[1] On August 7, 2024, this Court summarily affirmed the removal order "based on the nature of the matter at issue," and "[g]iven the need for accelerated consideration and resolution of the issues presented" by Petitioners, "with a detailed opinion to follow in due course." This is that detailed opinion.

member of the five-member Commission, Claire Ath, resigned in May 2023, leaving a vacancy to be filled under West Virginia Code § 3-10-7 (2018).[2] In June 2023, the Commission voted on two candidates to fill the vacancy; the vote split two (Ms. Jackson and Ms. Krouse) to two (Commission President Steve Stolipher and Commissioner Jane Tabb). The Jefferson County Republican Executive Committee (JREC) then presented the Commission with three candidates, as required under West Virginia Code § 3-10-7.

The Commission was to vote on those candidates at its August 17, 2023 meeting. But during the meeting, Ms. Krouse objected to one candidate—Mr. Keith Lowry. Ms. Krouse told the Commissioners that Mr. Lowry was not eligible for the vacancy because he had a conflict of interest and represented that she had an opinion from the West Virginia Ethics Commission to that effect. Ms. Jackson and Ms. Krouse threatened to leave the meeting if Commission President Stolipher continued the selection process. During the meeting, Ms. Krouse posted to her Facebook page that the candidates nominated by JREC were not "true conservatives," one "was disqualified under WV §61-10-15 due to ethical considerations regarding his employment," and the selection process could not proceed until JREC nominated someone else. Later, it was learned that the "ethics opinion" relied upon by Ms. Krouse was not a formal ethics opinion, but an email

---

[2] The Legislature made substantial amendments to West Virginia Code § 3-10-7 in 2024, effective January 1, 2025.

from Kimberly B. Weber, Executive Director of the West Virginia Ethics Commission.[3] Mr. Lowry later obtained an ethics opinion regarding the putative conflict of interest, in which the Ethics Commission set forth conditions under which Mr. Lowry might lawfully serve on the Jefferson County Commission.

The selection of a replacement Commissioner was placed on the Thursday, September 21, 2023 agenda.[4] Neither Ms. Jackson nor Ms. Krouse attended that meeting.[5] Posts made to their Facebook pages demonstrate that they did not attend the meeting in order to deny the Commission a quorum due to what Ms. Krouse deemed "abuses of

---

[3] Ms. Weber advised that West Virginia Code § 61-10-15 ("Pecuniary interest of county and district officers, teachers and school officials in contracts; exceptions; offering or giving compensation; penalties") (2022) "would most likely prohibit" Mr. Lowry's appointment or require that he "leave his job with the non profit because the county makes significant appropriations to the non profit." Ms. Weber went on to advise that "[w]hether the appropriation is significant enough is a question of fact," and that "an Advisory Opinion may be necessary."

The email was not shared with the other commissioners before the August 17 meeting, despite having been received at 3:24 p.m. on August 15. And, Ms. Krouse did not provide a copy of Ms. Weber's email to Nathan Cochran, Assistant Prosecuting Attorney, after the August 17 meeting, despite her assurance that she would do so.

[4] September 21, 2023 was the third Thursday of the month.

[5] Commission President Stolipher rescheduled the meeting for September 28 (the fourth Thursday of September), with the approval of Commissioner Tabb. A dispute then arose between Commission President Stolipher and Ms. Krouse as to whether the September 28 meeting was a properly scheduled, special meeting under County policy. As noted below, the three-judge court did not consider the "issue of the process utilized to schedule the special sessions during [Ms. Jackson and Ms. Krouse's] absence from meetings" because "[t]he issue is not relevant with the knowledge that [Ms. Jackson and Ms. Krouse] did not attend regular sessions, properly noticed and scheduled."

3

authority" by Commission President Stolipher.[6]  The "protest" by Ms. Jackson and Ms. Krouse continued throughout October and November 30, 2023, denying the Commission a quorum, and blocking votes on certain items of County business.[7]

While Ms. Jackson and Ms. Krouse were originally focused on Mr. Lowry's potential ethics problem, they later raised concerns about the JREC selection process and the perceived lack of fit between the five-member Jefferson County Commission and the replacement selection process set out in § 3-10-7 (2018).  The Jefferson County Prosecuting Attorney's office[8] sought advice from the West Virginia Secretary of State regarding the replacement process set forth in West Virginia Code § 3-10-7.  On October

---

[6] Coincident with the scheduled start of the meeting, Ms. Jackson posted to Facebook that she and her "colleague Commissioner Jennifer Krouse" were taking the "drastic step of not attending the scheduled County Commission meeting, which denied the meeting a quorum," and that they were doing so "in protest of Commissioner Stolipher's actions and abuse of his position as president."  Also coincident to the meeting's scheduled start, Ms. Krouse posted to Facebook that she "should be at The Jefferson County Commission meeting," but that "due to President Stolipher's repeated abuses of authority, [she had] decided (along with Commissioner Jackson) to deny a quorum this evening."  Later, Ms. Krouse posted to Facebook that she was "willing to attend [Commission] meetings again AS LONG AS THEIR AGENDA DOESN'T INCLUDING FILLING THE VACANCY ON THE COMMISSION."

[7] The Commission attempted to meet on October 5, 2023 (first Thursday); October 12, 2023 (second Thursday); October 19, 2023 (third Thursday); November 2, 2023 (first Thursday); and November 16, 2023 (third Thursday).

[8] *See* W. Va. Code § 7-4-1(a) (2022) ("The prosecuting attorney shall also attend to civil suits in the county in which the state or any department, commission, or board thereof, is interested, and to advise, attend to, bring, prosecute, or defend, as the case may be, all matters, actions, suits, and proceedings in which such county or any county board of education is interested.").

4

4, 2023, Donald M. Kersey, III, General Counsel, Deputy Secretary of State, formally advised that under § 3-10-7,

> the county commission's duty to fill a vacancy within thirty days of a vacancy is mandatory. The law grants the commission a reprieve from that duty when the vacancy cannot be filled by shifting the authority to nominate individuals for consideration to the county executive committee. Once that list of nominees is submitted, the county commission has the duty to select an appointee from that list of nominees within fifteen days, regardless of the process that the executive committee followed when creating the list of nominees.
>
> Therefore, once the list is submitted, however it was created and even if it is contrary to the specific party's internal procedures, the law does not grant the county commission authority to consider such extrinsic matters. If there is a dispute over that executive committee's process for creating the list of nominees, the law is plain: such acts of the political party "may be reviewable by the courts," not the county commission.

Mr. Kersey also opined that if the Commission did not fulfill its duty to appoint a fifth commissioner under West Virginia Code § 3-10-7, it risked litigation and its members risked removal under West Virginia Code § 6-6-7. Mr. Kersey's opinion was forwarded to Commission President Stolipher, Commissioner Tabb, Ms. Jackson, and Ms. Krouse on October 6, 2023.

One week later, Ms. Jackson informed Mr. Kersey that JREC's selection process was "the subject of a court case" and inquired whether it would "be proper for the Commission to await the outcome of that pending litigation before proceeding with the selection process?" Mr. Kersey advised Ms. Jackson (informally) that the Commission must still proceed with the selection process. Ms. Jackson also posed three questions to

Mr. Kersey, two of which related to a "fail[-]safe" process (the parties' term) provided under § 3-10-7. Under that statute, the fail-safe process is triggered "[i]f the county commission fails to make the appointment [from the list supplied by the county executive committee] within" "15 days from the date on which the list is received," and entails a strike process, proceeding from most tenured commissioner to the least.[9] Ms. Jackson questioned whether the process could work in the present circumstances, since two Commissioners (Ms. Krouse and Commission President Stolipher) were equally tenured, and whether the Commission may need to seek a court ruling.

Mr. Kersey responded that West Virginia Code § 3-10-7 imposes a duty upon the Commission to appoint a new commissioner and that "it's clear that the appointment must be from the list of three names submitted by the executive committee at this point . . . ." Mr. Kersey also advised that while the "failsafe does not likely apply," that "a version of the failsafe could be followed . . . by the second-most tenured commissioners cooperating and deciding together which of the two remaining nominees should be stricken from the list . . . ." Mr. Kersey detailed that process for Ms. Jackson in an October 20, 2023 email; explained that "[t]he law is clear that disagreement is not an available option;" and informed Ms. Jackson that it was his belief that "the commission bears the burden of figuring out how to get to an agreement."

---

[9] W. Va. Code § 3-10-7(b).

On October 31, 2024, Ms. Krouse emailed Respondent Matthew Harvey, Prosecuting Attorney of Jefferson County, "to request [his] assistance/guidance with the ongoing impasse regarding seating the temporary Commissioner from the Charles Town District." Ms. Krouse explained that "[s]etting aside any political considerations with the seat, [her] main concern [was] that The Commission proceeds in a LEGAL fashion." Ms. Krouse stated her belief that, considering the equal tenure shared by two commissioners, West Virginia Code § 3-10-7 (2018) did "not provide a path forward," based upon "an opinion from the secretary of state's office" and statements by Nathan Cochran, Assistant Prosecuting Attorney, earlier in the selection process.[10] Ms. Krouse went on to state that, "*[w]hen a law is unclear, the solution is to seek court guidance on how to proceed.*" Ms. Krouse then wrote,

> Speaking for myself, (I believe I speak for Commissioner Jackson as well) I would be delighted to attend the meeting THIS Thursday [November 2, 2023] if Commission President Stolipher would only agree to remove the vacancy from the Agenda. This would give us a chance to complete all outstanding county business as well as discuss *AS A COMMISSION* how we seek court guidance to ensure that we proceed in a proper *AND LEGAL* fashion.

---

[10] In a June 2023 email , Mr. Kersey advised a representative of JREC that West Virginia Code § 3-10-7 "doesn't contemplate 5-person county commissions. So either the commissioners will need to pick a person they can agree on, or they're going to be left with a 4-person commission that reaches impasse when there's a 2-2 vote split." Mr. Kersey wrote that an assistant prosecuting attorney agreed that that was the case, "absent a statutory change . . . ." Mr. Kersey testified during the removal hearing that it was "fair" to say that his "opinion matured or evolved through the – through the process[.]"

Mr. Harvey responded by forwarding the legal advice he had received from the Secretary of State's office. He also advised that "the commission cannot take official action as a body unless there is a meeting and a vote. That means any commission initiated court intervention would have to be after a meeting, discussion, and vote."

Again, throughout the fall of 2023, Ms. Jackson and Ms. Krouse refused to attend Commission meetings. This denied the Commission a quorum, which prevented the Commission from addressing routine County business, including probate matters, personal property tax exonerations, a grant application, and personnel issues. The Commission's inability to act during that time threatened internet and radio service at the County 9-1-1 center as well as the continuity of maintenance and support services for the public safety radio services. Importantly, the lack of quorum in the fall of 2023 prevented the County Commission from considering the release of a $1,098,789.00 development bond for a subdivision. In response, the developer petitioned the Circuit Court of Jefferson County for mandamus relief to force the Commission to consider releasing the bond. The circuit court conducted a hearing on November 30, 2023,[11] then ordered the County Commission to "consider release of the Bond as set forth in the agenda and other all other properly noticed agenda items" at a Commission meeting later that day.[12] Ultimately, when the

---

[11] Ms. Jackson and Ms. Krouse were called to testify at the hearing. They asserted their Fifth Amendment privilege against self-incrimination.

[12] In that order, the circuit court also "ADJUDGED that two members of the Jefferson County Commission have, by denying the Commission a quorum, deliberately and knowingly refused to exercise a clear legal duty to attend and conduct meetings of the

8

Commission met as ordered on November 30, 2023, Commission President Stolipher and Ms. Krouse (the second-most tenured Commissioners) voted to strike the same candidate, the process put forth by Mr. Kersey weeks earlier.

On November 11, 2023, Mr. Harvey petitioned for the removal of Ms. Jackson and Ms. Krouse from their offices. Mr. Harvey alleged that Ms. Jackson and Ms. Krouse willfully refused to perform their duty to attend Commission meetings in September, October, and November; to appoint a commissioner to fill a recently vacated seat; and to attend to County business. Mr. Harvey alleged that Ms. Jackson and Ms. Krouse's behavior amounted to neglect of duty, official misconduct, or incompetence as defined in West Virginia Code § 6-6-1 (2018), warranting their removal from office. Also in early November 2023, Mr. Harvey initiated a criminal investigation of Ms. Jackson and Ms. Krouse. That same month, a special prosecutor was appointed to helm the criminal investigation.

On December 28, 2023, Chief Justice Elizabeth D. Walker appointed the Hon. Joseph K. Reeder, Judge; the Hon. Perri Jo DeChristopher, Judge; and the Hon. Jason Wharton, Judge, to preside over the removal proceedings, as required under West Virginia

---

Jefferson County Commission and to consider release of the Bond . . . ." The circuit court also ordered the parties to brief the matter of attorneys' fees. The County Commission eventually paid the developer's legal fees incurred in prosecuting the mandamus action, $17,937.75.

Code § 6-6-7(g).[13]  A removal hearing date was set for late March 2024.  On March 8, 2024, criminal complaints were filed against Ms. Jackson and Ms. Krouse and arrest warrants were issued for both.  The complaints charged Ms. Jackson and Ms. Krouse with failure to perform official duties under West Virginia Code §§ 61-5-28 (1923),[14] 3-10-7, 11-3-27 (2000),[15] and conspiracy under West Virginia Code § 61-10-31 (1971).  Ms. Jackson and Ms. Krouse were arrested on March 11, 2024, then released on bail.  On March 13, Ms. Jackson and Ms. Krouse moved the court to continue the removal hearing to allow them time to retain a criminal attorney and to coordinate their strategy for the upcoming removal hearing with their defense in the criminal matter.  The court denied the motion to continue on March 14, 2024.  Ms. Jackson and Ms. Krouse moved the court to reconsider that decision on March 15.  The court denied that motion the same day.

The court conducted the removal hearing on March 26 and 27, 2024.  At the hearing, Mr. Harvey presented the testimony of Commissioner Tabb; Commission President Stolipher; Mr. Kersey; County officials; and County employees.  Ms. Jackson

---

[13] For the reader's ease, we refer to this three-judge court simply as "the court" throughout the remainder of this Opinion.

[14] *See* W. Va. Code § 61-5-28 (1923) ("Any person holding any office or appointment in this State, who shall wilfully fail or refuse to perform any duty required of him by law, shall be guilty of a misdemeanor, and, upon conviction thereof, shall, if no other punishment be prescribed by law therefor, be fined not exceeding one hundred dollars.").

[15] *See* W. Va. Code § 11-3-27 (2000) ("Any taxpayer . . . claiming to be aggrieved by any entry in the property books of the county . . . may . . . apply for relief to the county commission of the county in which such books are made out . . . .").

and Ms. Krouse were also called to testify; however, as they faced prosecution related to the events at issue in the removal action, they asserted the Fifth Amendment privilege and refused to answer questions, just as they had during the hearing conducted as part of the earlier mandamus proceeding before the Circuit Court of Jefferson County. Ms. Jackson and Ms. Krouse presented the testimony of Marshall Wilson, then a gubernatorial candidate representing the Constitution Party; Mark Everhart, a volunteer political consultant; and Robert Aitchison, a retired attorney. Mr. Harvey introduced more than one hundred exhibits. Ms. Jackson and Ms. Krouse introduced seven.

The court ordered the removal of Ms. Jackson and Ms. Krouse from their offices as Commissioners of the Jefferson County Commission on May 1, 2024. In the forty-seven-page order, the court found that "the allegations of the Removal Petition of either misconduct and/or neglect of duty [had] been proven by clear and convincing evidence and [were] sufficient to warrant the removal" of Ms. Jackson and Ms. Krouse from office. The court made an inference adverse to Ms. Jackson and Ms. Krouse based upon their invocation of the Fifth Amendment privilege against self-incrimination during the removal hearing. Ms. Jackson and Ms. Krouse now appeal the removal order and the orders denying their motion to continue and motion for reconsideration.

11

## II. STANDARDS OF REVIEW

This Court applies a two-prong standard of review when a case is tried to the circuit court, as we explained in Syllabus Point 1 of *Public Citizen, Inc. v. First National Bank in Fairmont*:

> [i]n reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.[16]

And as discussed in more detail below, Ms. Jackson and Ms. Krouse's appeal presents this Court the opportunity to consider its jurisdiction over removal orders entered under West Virginia Code § 6-6-7 following passage of the West Virginia Appellate Reorganization Act of 2021. Regarding jurisdictional questions, we have stated that:

> "[i]t is well established that the issue of subject matter jurisdiction can be raised at any time, even *sua sponte* by this Court." *State ex rel. Universal Underwriters Ins. Co. v. Wilson*, 239 W. Va. 338, 345, 801 S.E.2d 216, 223 (2017). "Whether a court has subject matter jurisdiction over an issue is a question of law[.]" *Snider v. Snider*, 209 W. Va. 771, 777, 551 S.E.2d 693, 699 (2001). Because "jurisdictional issues are questions of law, our review is de novo." *Wilson*, 239 W. Va. at 343, 801

---

[16] Syl. Pt. 1, *Pub. Citizen, Inc. v. First Nat'l Bank in Fairmont*, 198 W. Va. 329, 480 S.E.2d 538 (1996).

S.E.2d at 221 (citing Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995)).[17]

## III. ANALYSIS

Ms. Jackson and Ms. Krouse first argue that the court erred when it found that Mr. Harvey offered evidence sufficient to merit their removal from office under West Virginia Code § 6-6-7. They also argue that the court erred when it drew an adverse inference from their decisions to assert the Fifth Amendment privilege during the removal hearing. Finally, Ms. Jackson and Ms. Krouse argue that the court erred when it denied their motion to continue the removal hearing and, later, their motion to reconsider. We will address those arguments in due course. But, as noted above, we first address this Court's jurisdiction over Ms. Jackson and Ms. Krouse's appeal.

### A. *Jurisdiction*

The court entered the May 1, 2024, order removing Ms. Jackson and Ms. Krouse from their offices as members of the Jefferson County Commission under West Virginia Code § 6-6-7. That statute sets forth the process for the removal of various public officers, including county commissioners. Broadly, a county prosecutor may commence proceedings to remove a county officer from office by serving charges of "official misconduct, neglect of duty, incompetence or for any of the causes or on any of the grounds

---

[17] *M.H. v. C.H.*, 242 W. Va. 307, 311−12, 835 S.E.2d 171, 175−6 (2019) (internal note omitted).

13

provided by any other statute," "upon the circuit court in whose jurisdiction the officer serves . . . ."[18]  "If the court finds that the resolution or petition is sufficient under the standards for removal set forth [in § 6-6-7] to proceed to a hearing before a three-judge court, the court shall forward a copy of the resolution or petition to the Supreme Court of Appeals."[19]  The Chief Justice of the Supreme Court of Appeals then,

> designate[s] and appoint[s] three circuit judges within the state, not more than one of whom shall be from the same circuit in which the resolution or petition was filed and, in the order of such appointment, shall require that the three-judge court designate the date, time and place for the hearing of the resolution or petition forthwith.

> Such three-judge court shall, without a jury, hear the charges, any motions filed by either party and all evidence offered in support thereof or in opposition thereto, and upon satisfactory proof of the charges by clear and convincing evidence, shall remove any such officer from office . . . .  Any final order either removing or refusing to remove any such person from office shall contain such findings of fact and conclusions of law as the three-judge court shall deem sufficient to support its decision of all issues presented to it in the matter.[20]

Under subsection (h) of § 6-6-7,

> [a]n appeal from an order of such three-judge court removing or refusing to remove any person from office pursuant to this section *may be taken to the Supreme Court of Appeals* within thirty days from the date of entry of the order from which the appeal is taken. *The Supreme Court of Appeals shall consider*

---

[18] W. Va. Code § 6-6-7(a) and (d).

[19] *Id*. § 6-6-7(g).

[20] *Id*.

*and decide the appeal upon the original papers and documents*, without requiring the same to be printed and shall enforce its findings by proper writ.[21]

In 2021, the Legislature enacted the West Virginia Appellate Reorganization Act of 2021, and created the West Virginia Intermediate Court of Appeals.[22]  In West Virginia Code § 51-11-4, the Legislature granted the Intermediate Court "appellate jurisdiction over . . . [f]inal judgments or orders of a circuit court in all civil cases . . . entered after June 30, 2022,"[23] among other types of final judgment or orders.  The Legislature also specified in West Virginia Code § 51-11-4 matters over which the Intermediate Court does not have appellate jurisdiction; for example, judgments or orders in juvenile proceedings, proceedings of the Lawyer Disciplinary Board, and proceedings in which certain types of extraordinary relief is sought.[24]

Having reviewed West Virginia Code § 51-11-4 with care, we do not see that it addresses appellate jurisdiction over an order like the one at issue here—that is, a final order of removal under West Virginia Code § 6-6-7.  "It is a settled principle of statutory construction that courts presume the Legislature drafts and passes statutes with full

---

[21] *Id*. § 6-6-7(h) (emphasis added).

[22] *Id*. § 51-11-3(b).

[23] *Id*. § 51-11-4(b)(1).

[24] *Id*. § 51-11-4(d)(2), (5), and (10).

15

knowledge of existing law."[25] So, we must presume that, in allotting appellate jurisdiction as it did in West Virginia Code § 51-11-4 and omitting any reference to appeals from final judgments or orders entered under West Virginia Code § 6-6-7, the Legislature intended not to disturb the appellate process specified in the latter statute.[26] For that reason, we now hold that under West Virginia Code § 6-6-7(h) (2016), the Supreme Court of Appeals of West Virginia exercises appellate jurisdiction over a final order entered under subsection (g) of West Virginia Code § 6-6-7, removing or refusing to remove from office any of those persons listed in subsection (a) of that statute. Applying that holding, we conclude that subsection (h) of West Virginia Code § 6-6-7 provides this Court with appellate jurisdiction over the court's May 1, 2024 order, removing Ms. Jackson and Ms. Krouse from their county offices.

## B.    Sufficiency of the Evidence

We now turn to Ms. Jackson and Ms. Krouse's first assignment of error: that "[t]he three-judge panel erred in finding that [Mr. Harvey] had met his burden of proof and ordering that [they] be removed from office." Before assessing their arguments in support of that alleged error, we briefly review the pertinent law.

---

[25] Syl. Pt. 1, *Duff v. Kanawha County. Commission*, ___ W. Va. ___, 905 S.E.2d 528, 2024 WL 1715130 (2024)..

[26] Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975) ("The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature.").

16

Again, West Virginia Code § 6-6-7(a) provides that, "[a]ny person holding any county . . . office . . . the term or tenure of which office is fixed by law . . . may be removed from such office . . . for official misconduct, neglect of duty, incompetence or for any of the causes or on any of the grounds provided by any other statute." Similarly, this Court has held that,

> [p]ublic officers of a county may be removed from office for official misconduct, malfeasance in office, incompetence, neglect of duty, or gross immorality. Removal of such officers is a drastic remedy, however, and statutory provisions prescribing the grounds for removal are strictly construed.[27]

West Virginia Code § 6-6-1(a) defines "official misconduct" as "conviction of a felony during the officer's present term of office or any willful unlawful behavior by a public officer in the course of his or her performance of the duties of the public office." Subsection (b) of that statute defines "neglect of duty" as "the knowing refusal or willful failure of a public officer to perform an essential act or duty of the office required by law."

Recognizing that removal from office under West Virginia Code § 6-6-7 is a "drastic remedy," this Court has held that,

> "[t]o warrant removal of an official pursuant to Code, 1931, § 6-6-7, clear and convincing evidence must be adduced to meet the statutory requirement of satisfactory proof." Syl. pt. 3, *In the Matter of Boso*, 160 W.Va. 38, 231 S.E.2d 715,

---

[27] Syl. Pt. 1, *Kemp v. Boyd*, 166 W. Va. 471, 275 S.E.2d 297 (1981).

(1977); Syl. pt. 9, *Evans v. Hutchinson*, 158 W.Va. 359, 214 S.E.2d 453 (1975).[28]

According to Ms. Jackson and Ms. Krouse, Mr. Harvey did not offer satisfactory proof that they either engaged in official misconduct or neglect of duty because they were not convicted of a felony during their term in office and because the statutes cited in the petition for removal do not apply to them or "otherwise do not address any [of their] conduct . . . in the performance of their duties as County Commissioners." Ms. Jackson and Ms. Krouse contend that no evidence was introduced that they violated an essential duty of their office—attendance at meetings of the Jefferson County Commission. Ms. Jackson and Ms. Krouse assert that they could not have violated any mandate under West Virginia Code § 3-10-7 to appoint a replacement commissioner because that statute is "vague and ambiguous" and "legally impossible to comply with . . . ."[29]

---

[28] Syl. Pt. 2, *id.*

[29] Ms. Jackson and Ms. Krouse also assert that Mr. Harvey did not offer evidence to support allegations in the petition related to West Virginia Code §§ 3-9-23, 11-3-21, or 61-5-28. Those statutes relate to the imposition of criminal penalties for, among others, offenses under Chapter 3 of the West Virginia Code ("Elections") and dereliction of a duty required by Chapter 11 ("Taxation") of the West Virginia Code. It is not necessary to address those assertions, given that we do not reverse the court's findings that Ms. Jackson and Ms. Krouse engaged in official misconduct or neglect of duty by willfully failing to attend regularly scheduled Commission meetings and refusing to comply with the duty imposed by § 3-10-7 to appoint a fifth commissioner. Those findings alone support the court's conclusion that removal of Ms. Jackson and Ms. Krouse from their positions on the Commission was warranted.

18

Mr. Harvey responds—and we concur—that sufficient evidence was offered to the court to support the court's finding that Ms. Jackson and Ms. Krouse engaged in official misconduct or neglect of duty, as those terms are defined in West Virginia Code § 6-6-1, when they refused to attend regular commission meetings and to appoint a fifth commissioner in the fall of 2023.

Mr. Harvey offered the court undisputed evidence that the Jefferson County Commission had voted in January 2021 to schedule regular meetings on the first and third Thursdays of each month. He presented the court with undisputed evidence that Ms. Jackson and Ms. Krouse did not attend regularly scheduled Commission meetings in September, October, and November 2023; that their refusals to attend denied the Commission a quorum; and that without a quorum, the Commission was unable to act on pressing County business. For example, it is undisputed that because Ms. Jackson and Ms. Krouse refused to attend regularly scheduled Commission meetings in the fall of 2023, the Commission was unable to vote to release a $1,098,789.00 development bond. That, in turn, resulted in legal action against the Commission, an order mandating it to meet and to conduct business, and an eventual payment of $17,937.75 in attorneys' fees to the aggrieved developer.

Mr. Harvey also offered the court evidence demonstrating that Ms. Jackson and Ms. Krouse's refusal or failure to attend regularly scheduled Commission meetings during the fall of 2023 was knowing and willful. For example, at the time the September

19

21, 2023 Commission meeting was scheduled to commence, Ms. Jackson posted to Facebook that she was taking the "drastic step of not attending the scheduled County Commission meeting . . . in protest . . . ." Also coincident to the meeting's scheduled start, Ms. Krouse posted to Facebook that she "should be at The Jefferson County Commission meeting" but had "decided (along with Commissioner Jackson) to deny a quorum [that] evening." Based on that and similar evidence submitted to the court, this Court will not disturb the court's finding that Ms. Jackson and Ms. Krouse willfully and intentionally refused to attend regularly scheduled Commission meetings in the fall of 2023.[30]

It does not appear that either Ms. Jackson or Ms. Krouse disagrees that attendance at county commission hearings is an essential duty of the office of county commissioner—only that the meetings they did not attend were not meetings that "counted." According to Ms. Jackson and Ms. Krouse, they were not legally obligated to attend Commission meetings in the fall of 2023 because they were either special meetings *not* scheduled by a quorum of the Commission or because a county commission is obligated to meet only four times per year under West Virginia Code § 7-1-2 and "there was no legal authority introduced by [Mr. Harvey] to support that the" regular meeting schedule voted on by the Commission "superseded W.Va. Code § 7-1-2." Like the court, we decline to

---

[30] Again, we note that the Circuit Court of Jefferson County adjudged in November 2023 "that two members of the Jefferson County Commission have, by denying the Commission a quorum, deliberately and knowingly refused to exercise a clear legal duty to attend and conduct meetings of the Jefferson County Commission and to consider release of the Bond . . . ."

address Ms. Jackson and Ms. Krouse's argument regarding the setting of special meetings.[31]

As to their alternative argument, Ms. Jackson and Ms. Krouse are correct that West Virginia Code § 7-1-2 mandates that county commissions "shall hold four regular sessions in each year at the courthouse thereof, at such times as may be fixed upon and entered of record by the court."[32]  But we disagree with Ms. Jackson and Ms. Krouse's view of that four-meeting requirement.  In *State ex rel. Conley v. Thompson*,[33] this Court concluded that action taken during one of *twelve*, regularly scheduled meetings of the Logan County Commission sufficed to appoint a justice of the peace—even though the West Virginia Constitution and statute required county commissions to meet only *four* times per year.[34]  In rejecting an argument parallel to Ms. Jackson and Ms. Krouse's in *Thompson*, we explained that,

> [w]hether, under the constitution, the court can appoint more
> than four regular terms has never been judicially determined,

[31] The court expressly declined "to address the issue of the process utilized to schedule the special sessions during [Ms. Jackson and Ms. Krouse's] absence from meetings."  We concur that that issue is not germane to the fact that Ms. Jackson and Ms. Krouse willfully refused to attend regularly scheduled Commission meetings or to fulfill their duty under West Virginia Code § 3-10-7.

[32] This statute follows section 9, Article IX of the West Virginia Constitution:  The county commission "shall hold four regular sessions in each year, and at such times as may be fixed and entered of record by the said commission. Provisions may be made by law for holding special sessions of said commissions."

[33] *State ex rel. Conley v. Thompson*, 100 W. Va. 253, 130 S.E. 456 (1925).

[34] *Id*. at 262, 130 S.E. at 460.

21

but as there is no limitation upon the number of special terms that may be held, we do not see upon what reason more than four regular terms may not be advisable and proper, unless prohibited or limited by the organic law. . . . Provisions of the constitution and statutes concerning the times and places of holding courts should be construed liberally. 1 Wells on the Jurisdiction of Courts, sec. 302. But limiting county courts to four regular terms, where regular terms have been provided for monthly, and held as provided, which four of the twelve are to be regarded as regular terms? Are all to be regarded unlawful? If not, which are to be treated as unlawful, and which are the lawful ones?

The record certified here shows that the action of the court appointing relator was taken at a regular term, and this, prima facie at least, ought to suffice.[35]

We do not understand Ms. Jackson and Ms. Krouse to dispute that the Commission approved by proper vote in 2021 a regular schedule of meetings on the first and third Thursdays of each month; rather, we understand their argument to be that they were not obligated to attend any Commission meetings beyond the four meetings required under the West Virginia Constitution and West Virginia Code § 7-1-2. But that is the exact argument that failed in *Thompson*, where we saw no "reason more than four regular terms may not be advisable and proper" and found action taken by a county commission at a meeting that may (or may not) have been one of the four meetings mandated by West Virginia Code § 7-1-2 to be prima facie effective. Further, in *Thompson*, we noticed the practical problem presented by Ms. Jackson and Ms. Krouse's argument:

---

[35] *Id*.; *see also* 45 W. Va. Op. Att'y Gen. 63 (1952) (concluding "that there is nothing in the constitution or statutes which prevents a county court from legally being in session every day in the year, if necessary, except Sundays and holidays").

But limiting county courts to four regular terms, where regular terms have been provided for monthly, and held as provided, which four of the twelve are to be regarded as regular terms? Are all to be regarded unlawful? If not, which are to be treated as unlawful, and which are the lawful ones?[36]

In sum, we do not accept Ms. Jackson and Ms. Krouse's argument that they were not obligated to attend regularly scheduled Commission meetings in the fall of 2023 because (1) Ms. Jackson and Ms. Krouse have not presented authority in contradiction of *Thompson*, and (2) Ms. Jackson and Ms. Krouse were indisputably aware of the regular meeting schedule and the impact of their absence from those meetings. For those reasons, we decline to disturb the court's ultimate finding of official misconduct or neglect of duty.

As stated above, the court also found that Ms. Jackson and Ms. Krouse engaged in neglect of duty or official misconduct when they refused to appoint a fifth commissioner under West Virginia Code § 3-10-7 (2018). West Virginia Code § 3-10-7(a) provides that "[a]ny vacancy in the office of county commissioner or clerk of county commission *shall be filled by appointment of the county commission.*"[37] The commission has thirty days to do so; if it does not, then the county executive committee of the party of the preceding officeholder "shall submit a list of three legally qualified persons to fill the

---

[36] *Thompson*, 100 W. Va. at 262, 130 S.E. at 460.

[37] Emphasis added.

23

vacancy."[38]  The remaining commissioners must then appoint a candidate from that list to fill the vacancy within fifteen days; if they cannot do that,

> [t]hen the county commissioner with the longest tenure shall eliminate one name from the submitted list, followed by the county commissioner with the second-longest tenure then eliminating one name from the submitted list. The name remaining after those two names have been eliminated shall be deemed to be appointed by the county commission to fill the vacancy.

Again, Mr. Harvey presented evidence that Ms. Jackson and Ms. Krouse refused to perform the duty imposed by West Virginia Code § 3-10-7 to appoint a replacement commissioner.  Mr. Harvey presented evidence of Ms. Jackson and Ms. Krouse's repeated refusals to attend a Commission meeting so long as the appointment of a fifth commissioner appeared on the meeting agenda.  Mr. Harvey presented evidence that Ms. Jackson and Ms. Krouse were advised multiple times of the duty to appoint under West Virginia Code § 3-10-7 yet continued to refuse to meet and vote on the matter.  Mr. Harvey presented evidence that Ms. Jackson and Ms. Krouse were advised as to how the Commission might proceed under West Virginia Code § 3-10-7(b), despite the equal tenure of Ms. Krouse and Commissioner Stolipher, but they continued to refuse to meet and vote on the matter.  And Mr. Harvey presented evidence that Ms. Jackson and Ms. Krouse only voted on the appointment of the fifth commissioner after the Circuit Court of Jefferson

---

[38] W. Va. Code § 3-10-7(b) (2018).

24

County ordered the Commission to meet on November 30, 2023, and "consider release of the Bond as set forth in the agenda and other all other properly noticed agenda items . . . ."

True, Ms. Jackson and Ms. Krouse expressed reservations about various aspects of the appointment process throughout the fall of 2023—the qualifications of a candidate proposed by JREC, the process by which JREC had settled upon the list of candidates proposed to the Commission, and the Commission's putative inability to follow the fail-safe procedure laid out in West Virginia Code § 3-10-7. Regardless, we do not see in these circumstances that those concerns negate the mandate set forth in West Virginia Code § 3-10-7(a): "[a]ny vacancy in the office of county commissioner or clerk of county commission *shall be filled by appointment of the county commission*."[39] And, while Ms. Krouse advocated for the Commission to seek court guidance as to how the Commission might comply with West Virginia Code § 3-10-7, she was advised that the Commission could not do that without a quorum and a vote. Yet even then, Ms. Krouse refused to attend a Commission meeting until ordered to do so by the Circuit Court of Jefferson County. For all those reasons, we do not agree with Ms. Jackson and Ms. Krouse that the court erroneously found that they had engaged in official misconduct or neglect of duty.[40]

---

[39] Emphasis added.

[40] We see no error in the court's conclusion that Ms. Jackson and Ms. Krouse's refusal to attend Commission meetings the fall of 2023 or to appoint a fifth Commission member "is neglect of duty or official misconduct sufficient, *standing alone*, to remove [Ms. Jackson and Ms. Krouse] from office." (Emphasis added).

25

*C.*        *Adverse Inference*

Ms. Jackson and Ms. Krouse also argue for the reversal of the removal order because the court drew an adverse inference due to their invocation of the Fifth Amendment privilege when questioned at the evidentiary hearing.  Ms. Jackson and Ms. Krouse argue that the court erred in taking the adverse inference because removal proceedings are unique and may result in "the single most undemocratic drastic remedy available . . . ."  Mr. Harvey responds that Ms. Jackson and Ms. Krouse failed to preserve this argument for appellate review, and that the court's action was lawful.

We concur that Ms. Jackson and Ms. Krouse did not preserve this issue for appellate review.  Ms. Jackson and Ms. Krouse's counsel did not object when the court stated the possibility that an adverse inference might be drawn from Ms. Jackson and Ms. Krouse's assertion of the Fifth Amendment privilege.[41]  Also, during closing arguments, Ms. Jackson and Ms. Krouse's counsel stated that, "it is true that the [c]ourt can make a negative inference about the questions asked of [Ms. Jackson and Ms. Krouse] by

---

[41] After counsel told the court that Ms. Jackson and Ms. Krouse planned to assert the Fifth Amendment privilege when called to testify, the court stated that it was,

> aware that [Ms. Jackson and Ms. Krouse] do have the constitutional right to assert their Fifth Amendment privileges in this matter; however, given the fact that this is a civil proceeding and not a criminal proceeding, I think under the law, the Court can draw a negative inference as a result of their asserting that privilege for purposes of this proceeding.

Ms. Jackson and Ms. Krouse's counsel responded, "Yes, understood, your honor."

26

Prosecutor Harvey while they were on the stand because they asserted their Fifth Amendment rights against self-incrimination." Considering those statements, we agree with Mr. Harvey that Ms. Jackson and Ms. Krouse have not preserved this error for appellate review and so we decline to address it.

### D.    *Motion to Continue*

Finally, Ms. Jackson and Ms. Krouse argue that the court erroneously denied their March 13, 2023 Motion to Continue the evidentiary hearing, scheduled for March 26. Recall that Ms. Jackson and Ms. Krouse sought to continue the evidentiary hearing because, on March 8, 2023, criminal complaints were filed against them, stemming from the circumstances underlying the removal proceeding. Ms. Jackson and Ms. Krouse argued to the court that a continuance was necessary to allow them to retain a criminal defense attorney, coordinate their defenses in the removal and criminal proceedings, and assess whether they would need to assert the Fifth Amendment privilege during the evidentiary hearing on the removal petition. The court summarily denied Ms. Jackson and Ms. Krouse's motion and the motion to reconsider they filed shortly after.

Ms. Jackson and Ms. Krouse's arguments on appeal largely mirror those they asserted in support of their motion to the court. Mr. Harvey responds that Ms. Jackson and Ms. Krouse had known about potential criminal charges since November 2023. Mr. Harvey also argues that removal proceedings under West Virginia Code § 6-6-7 are to be completed expeditiously, and that Ms. Jackson and Ms. Krouse's position (facing legal

action in the civil and criminal contexts and the attendant decision whether to exercise the

Fifth Amendment privilege) is not unique.

This Court has held that,

"[i]t is well settled as a general rule that the question of continuance is in the sound discretion of the trial court, which will not be reviewed by the appellate court, except in case it clearly appears that such discretion has been abused." Syl. Pt. 1, *Levy v. Scottish Union & National Ins. Co.*, 58 W.Va. 546, 52 S.E. 449 (1905).[42]

Further,

"[w]hether there has been an abuse of discretion in denying a continuance must be decided on a case-by-case basis in light of the factual circumstances presented, particularly the reasons for the continuance that were presented to the trial court at the time the request was denied." Syllabus Point 3, *State v. Bush,* 163 W.Va. 168, 255 S.E.2d 539 (1979).[43]

We see no abuse of discretion by the court in denying Ms. Jackson and Ms.

Krouse's motion to continue the evidentiary hearing. Ms. Jackson and Ms. Krouse had

been aware of a criminal investigation since November 2023. That circumstance belies

Ms. Jackson and Ms. Krouse's assertion that a continuance was necessary to allow them to

secure criminal counsel when charges were filed roughly four months later in March 2024.

---

[42] Syl. Pt. 2, *Nutter v. Maynard*, 183 W. Va. 247, 395 S.E.2d 491 (1990).

[43] Syl. Pt. 4, *W. Va. Dep't of Health & Hum. Res. Emps. Fed. Credit Union v. Tennant*, 215 W. Va. 387, 599 S.E.2d 810 (2004).

In addition, Ms. Jackson and Ms. Krouse were aware of the potential interaction of civil and criminal proceedings, too; both women asserted the Fifth Amendment privilege when called to testify before the Circuit Court of Jefferson County in the mandamus action related to the unreleased development bond in November 2023. Given those circumstances, we do not see that the court abused its discretion in denying Ms. Jackson and Ms. Krouse's motion to continue the removal hearing.

## IV. CONCLUSION

For the reasons stated above, we affirm the May 1, 2024 order of the Circuit Court of Jefferson County removing Ms. Jackson and Ms. Krouse from office under West Virginia Code § 6-6-7.

AFFIRMED